UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61865-CIV-ALTONAGA/Brown

**4658 NORTH OCEAN INC.**
and **ANGELA DIPILATO**,

    Plaintiffs,
vs.

**BRANCH BANK AND TRUST COMPANY**, d/b/a **BB&T**,

    Defendant.
_____/

## ORDER

**THIS MATTER** is before the Court on Defendant, Branch Banking and Trust Company's ("BB&T['s]") Motion to Dismiss ("Motion") [ECF No. 3], filed on October 7, 2010. The Court has considered the parties' written submissions and applicable law.

### I. BACKGROUND[1]

This case involves a suit by an individual officer of a corporation against a bank for damages incurred when BB&T honored checks both signed by an unauthorized third party in his name and forged with the corporate officer's signature, which were drawn against the corporation's bank account. The following allegations are set out in the Complaint and its exhibits.

Plaintiff, Angela DiPilato ("DiPilato"), a *pro se* litigant and president of 4658 North Ocean, Inc. ("North Ocean"), opened a business checking account at BB&T (formerly, Colonial Bank) for North Ocean in 2009. In January 2010, an employee of North Ocean wrote and endorsed checks in his own name, Nate Brown ("Brown"), and also forged DiPilato's signature on checks to third

---

[1] The allegations of Plaintiff's Complaint [ECF No. 1-2] are taken as true.

Case No. 10-61865-CIV-ALTONAGA/Brown

parties drawn on North Ocean's account for more than $700.00 each. Brown did this without DiPilato or North Ocean's knowledge or authorization. Upon discovery of the unauthorized checks in late January 2010, DiPilato notified BB&T.

On January 27, 2010, DiPilato executed a notarized statement on BB&T letterhead indicating she was "aware of and will not dispute any item that is issued against" the North Ocean account. (Compl. Ex. B 98). The statement lists three checks in the amounts of $175.00, $314.00 and $246.00 to various payees "issued and/or signed by Nate Brown." (*Id.*). DiPilato also attested, "I I am fully aware of, granted authorization for, and will not dispute any additional item(s), not listed above, that Nate Brown signed against the above account." (*Id.*).

Subsequently, DiPilato realized other checks had been drawn on North Ocean's account without authorization or by forgery. She exchanged repeated correspondence with BB&T advising the bank of the checks and amounts, and seeking recovery of the funds. In total, over $35,000.00 were drawn on North Ocean's account. On April 20, 2010, DiPilato filed a report with the Broward Sheriff's Office. (*See* Compl. Ex. C 100–102). On May 20, 2010, BB&T denied DiPilato's reimbursement request because she "did not report the exception(s) . . . in writing within 30 days after [BB&T] mailed [North Ocean's] statement; thereby not exercising 'reasonable care and promptness'" and because DiPilato provided the bank "with a signed request to accept the signature of Nate Brown, [North Ocean's] employee, on items previously presented for payment against [the] account." (*Id.* Ex. E 108). The BB&T denial letter also advised, "As an employer, [North Ocean] failed to exercise ordinary care over negotiable instruments by entrusting an employee with authority to negotiate instruments and not properly supervising the activities of that employee." (*Id.*).

Case No. 10-61865-CIV-ALTONAGA/Brown

On September 15, 2010, North Ocean and DiPilato filed suit against BB&T in the Circuit Court of the Seventeenth Circuit in and for Broward County, Florida, alleging negligence (Count I); breach of good faith duties (Count II); conversion (Count III); breach of warranty (Count IV); and fraud (Count V). (*See* Compl. ¶¶ 13–47). BB&T timely removed to federal court [ECF No. 1] and concurrently filed the present Motion. Because North Ocean was unrepresented by counsel, it was dismissed without prejudice on October 12, 2010 [ECF No. 7].

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). A court's analysis of a Rule

12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto." *Brooks*, 116 F.3d at 1368.  The Court may also consider other documents to be part of the pleadings for purposes of Rule 12(b)(6) where the plaintiff refers to the documents in the complaint and those documents are central to the plaintiff's claim.  *Id.* at 1369.

### III.  ANALYSIS[2]

BB&T maintains DiPilato fails to allege facts necessary to state a claim against it because she "failed to allege how she has been damaged in her individual capacity." (Mot. 3). Count I of the Complaint, alleging negligence, specifies $35,000.00 in damages stemming from the checks improperly paid on North Ocean's bank account. (*See* Compl. ¶ 17).  Counts II through IV— for breach of good faith duties, conversion, and breach of warranty — are also for damages due to the erroneously disbursed funds in North Ocean's account as well as costs to recover the lost funds. (*See id.* ¶¶ 21, 26, 30).  The bank account was held in the name of the corporation (*see, e.g.*, *id.* Ex. A 24–28, 54, 57), and was opened by DiPilato "as its corporate officer." (*Id.* ¶ 9).

In her Response, DiPilato asserts the allegation she opened the account "is sufficient to set forth that [she] has a significant financial interest in the corporate entity." (Resp. 12).  DiPilato also notes that on opening the bank account she was required "to submit corporate documents disclosing that she was a stockholder and that she had an individual financial stake in the company." (*Id.* 12–13).  Given these facts, even when taken in a light most favorable to DiPilato, the monetary

---

[2] BB&T filed this Motion one day after removing the case from state court seeking to dismiss the claims of North Ocean and DiPilato.  To the extent the Motion addresses North Ocean's claims, the Court denied the Motion as moot after North Ocean was dismissed. (*See* Oct. 12, 2010 Order [ECF No. 8]).  Thus, this Order addresses the Motion only as to the claims of DiPilato.

Case No. 10-61865-CIV-ALTONAGA/Brown

damages alleged could only be suffered by North Ocean and not by DiPilato because the account belonged to North Ocean, a legal entity separate and apart from her. *See United States v. Malnik*, 489 F.2d 682, 687 (5th Cir. 1974)[3] ("Even where the corporation has had only one stockholder, the courts have declined to hold that the corporate records and books were held in a personal capacity.") (collecting cases). As a result, DiPilato fails to state a claim against BB&T for negligence, breach of good faith duties, conversion or breach of warranty.

BB&T also asserts DiPilato fails to state a claim for fraud. (*See* Mot. 3). Count V of the Complaint alleges BB&T "coerced" DiPilato (Compl. ¶¶ 34, 37) to execute a document "fabricated" by BB&T (*id.* ¶ 38), which resulted in "economic loss, lost business and reputation, lost income and severe emotional distress, among other things" (*id.* ¶ 43). BB&T maintains the business and monetary losses are damages that can only be ascribed to North Ocean, as the owner of the BB&T bank account, and not to DiPilato. (*See* Mot. 3). While BB&T concedes DiPilato could, individually, suffer severe emotional distress, it maintains she fails to sufficiently "plead the ultimate facts that would support such a claim." (*Id.*).

In her Response, DiPilato cites and relies on the Rule 8 pleading standard, which requires a party set forth only a "short plain statement" of her claims sufficient to put the opposing party on notice. FED. R. CIV. P. 8. However, the Federal Rules of Civil Procedure require a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). With respect to the only damage DiPilato may have suffered — severe emotional distress, she

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Case No. 10-61865-CIV-ALTONAGA/Brown

fails to plead with particularity how she was coerced, by whom she was coerced, facts relating to the alleged acts, and the nexus between signing a document and severe emotional distress. As such, the fraud claim fails to sufficiently state a claim as to DiPilato.

DiPilato urges the Court to afford her Complaint a liberal reading because she is a *pro se* litigant. (*See* Resp. 4–5). While the Court recognizes "*pro se* complainants are held to [] pleading standards less stringent than those applicable to lawyers," *United States v. Roberts*, 308 F.3d 1147, 1153 (11th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), the Court may not gloss over basic legal principles to accommodate an insufficiently pleaded complaint.

Finally, BB&T urges the Court to dismiss the Complaint with prejudice. (*See* Reply 5). However, "[a] district court, before dismissing a complaint with prejudice because of a mere pleading defect, ordinarily must give a plaintiff one opportunity to amend the complaint and to cure the pleading defect. Leave to amend, however, need not be granted where amendment would be futile." *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239–40 (11th Cir. 2000) (citing *Isbrandtsen Marine Servs., Inc. v. M/V INAGUA Tania*, 93 F.3d 728, 734 (11th Cir.1996); *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 777 n.10 (11th Cir. 2000)) (internal citation omitted). Because DiPilato may be able to amend the Complaint to cure the pleading defects, leave to amend the Complaint is appropriate in this case.

### IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

Case No. 10-61865-CIV-ALTONAGA

1. Defendant's Motion to Dismiss **[ECF No. 3]** is **GRANTED** and the Complaint **[ECF No. 1-2]** is **DISMISSED without prejudice**.

2. Plaintiff, Angela DiPilato, has until **December 15, 2010** to file an amended complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of December, 2010.

*Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record